**United States District Court**
For the Northern District of California

1

2

3

4

5                          UNITED STATES DISTRICT COURT

6                          NORTHERN DISTRICT OF CALIFORNIA

7

8    TOMMY BAHAMA GROUP, INC.

9              Plaintiff,                        No. C 07-06360 EDL

10        v.                                     **ORDER GRANTING PLAINTIFF'S MOTION**
                                                 **FOR SUMMARY JUDGMENT RE:**
11                                               **INFRINGEMENT AND ON DEFENDANT'S**
                                                 **COUNTERCLAIMS**
12   RICHARD SEXTON

13             Defendant.

14   _____/

15        Plaintiff Tommy Bahama Group, Inc. ("TBG") has filed a motion for summary judgment of

16   its federal and common law trademark counterfeiting and infringement claims and  federal, state and

17   common law unfair competition claims.  TBG has also filed a motion for summary judgment of

18   Defendant Richard Sexton's three counterclaims for defamation and intentional and negligent

19   interference with prospective advantage.  The motions were fully briefed[1] and a hearing was held on

20   December 1, 2009.  Having considered the record in this case and the parties' statements at oral

21   argument, and for the reasons set forth below, the Court hereby GRANTS Plaintiff's Motion for

22   Summary Judgment Re: Infringement and Motion for Summary Judgment of Defendant's

23   Counterclaims and ENTERS JUDGMENT in the amount of $10,000.00 against Defendant.

24   **II.      Legal Standard**

25        Summary judgment shall be granted if "the pleadings, discovery and disclosure materials on

26   file, and any affidavits show that there is no genuine issue as to any material fact and that the movant

27

28

---

[1]      In addition to the Motions, Oppositions, and Replies, pro se Defendant also filed a document entitled "Response to Tommy Bahama's Reply Brief."  At oral argument, counsel for TBG stated that he had no objection to the unauthorized document, so the Court has considered it.

**United States District Court**
For the Northern District of California

is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c).  Material facts are those which may affect the outcome of the case.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  Id.  The court must view the facts in the light most favorable to the non-moving party and give it the benefit of all reasonable inferences to be drawn from those facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The court must not weigh the evidence or determine the truth of the matter, but only determine whether there is a genuine issue for trial.  Balint v. Carson City, 180 F.3d 1047, 1054 (9th Cir. 1999).

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case.  Id.  If the moving party meets its initial burden, the opposing party "may not rely merely on allegations or denials in its own pleading;" rather, it must set forth "specific facts showing a genuine issue for trial."  See Fed. R. Civ. P. 56(e)(2); Anderson, 477 U.S. at 250.  The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts."  See Matsushita, 475 U.S. at 588.  "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]."  See Anderson, 477 U.S. at 252.  If the nonmoving party fails to show that there is a genuine issue for trial, "the moving party is entitled to judgment as a matter of law."  Celotex, 477 U.S. at 323.

**III.   Factual Background**

TBG is in the business of designing and marketing casual sportswear, denim, swimwear, accessories and a home furnishings collection.  Declaration of Mary Margaret Heaton ("Heaton Decl.") ¶ 2.  Since at least 1993, TBG has used the trademark and service mark TOMMY BAHAMA in connection with its upscale, island-inspired apparel.  Id. ¶ 3.  Much of this apparel, including

United States District Court

For the Northern District of California

1  shirts, are marked with a logo that incorporates the TOMMY BAHAMA mark with a palm tree

2  between the two words.  Id. ¶ 4 (the "TOMMY BAHAMA Logo").  TBG has been the registered

3  owner of the TOMMY BAHAMA word mark since November 2, 1993 (Registration No. 1,802,812)

4  and the registered owner of the TOMMY BAHAMA palm tree logo mark since November 11, 2003

5  (Registration No. 2,782,036).  Id., Ex. A (copies of federal trademark registrations).  TBG is also the

6  owner of over 30 additional federal trademark registrations and applications issued or pending

7  before the United States Patent and Trademark Office that include in whole or in part the TOMMY

8  BAHAMA mark, and these marks are collectively referred to herein as the TOMMY BAHAMA

9  Marks.  Id. ¶ 5.  TBG has spent millions of dollars promoting and marketing goods and services

10 under the TOMMY BAHAMA Marks, and such goods are widely recognized as being associated

11 with TBG and its goodwill.  Id. ¶ 7.  In fiscal year 2008, TBG's net sales of goods and services

12 approximated $421 million.  Id. ¶ 9.

13      TBG operates over 80 retail stores for its apparel and other products in the United States, and

14 licenses third parties to operate retail stores in certain other countries.  Id. ¶ 10.  TBG also employs a

15 network of independent sales representatives who are authorized to sell TOMMY BAHAMA

16 branded merchandise to various other retail outlets and corporate accounts.  Id.  TBG also operates

17 12 combination restaurant/retail locations, and owns and operates a website located at

18 <tommybahama.com> where visitors can, among other things, purchase TOMMY BAHAMA brand

19 apparel.  Id. ¶ 11.  TBG operated three retail stores in the San Francisco Bay Area in 2004, and now

20 operates four.  Id. ¶ 12.

21      In addition to the marketing channels described above, numerous authentic TBG branded

22 products are also advertised and sold by registered sellers on the online auction website, eBay.

23 Heaton Decl., ¶ 13.  Additionally, many counterfeit TBG branded goods are sold on eBay and it is

24 extremely difficult for TBG to police all of the counterfeit products in the marketplace.  Id.  Since

25 2004, TBG has been the registered rights owner of the TOMMY BAHAMA Marks and brand under

26 eBay's Verified Rights Owner ("VeRO") program.  Id. ¶ 14.   The VeRO program is highly

27 automated, and contains an internet-based reporting tool.  Id. ¶ 16. This program was initiated by

28 eBay as a "notice and takedown" system that allows registered rights owners to report to eBay any

   listing offering potentially infringing items, so that eBay can remove such reported listings.  Id., Ex.

C at TBGI0128; <u>see also Tiffany, Inc. v. eBay, Inc</u>., 576 F. Supp. 2d 463, 478-79 (S.D.N.Y. 2008) (case explaining and documenting eBay's efforts to combat counterfeit sales in part through VeRO). The VeRO program is the only commercially effective way for TBG to monitor eBay auction listings for potentially infringing items (<u>Heaton Decl.</u> ¶ 14), and TBG periodically monitors the listing activity of products bearing the TOMMY BAHAMA Marks through the VeRO program as a means of protecting its intellectual property and maintaining brand integrity (<u>id</u>. ¶¶ 13-14, 17).

If and when TBG has a good faith belief that a certain item infringes on its intellectual property rights, TBG notifies eBay of the suspected infringing item with a Notice of Claimed Infringement ("NOCI") form, a form drafted by eBay that can be submitted  in either paper or electronic format.  <u>Id</u>. ¶ 17, Ex. C.  By sending the NOCI to eBay, TBG does not make a definitive factual finding that the listed item is counterfeit, and has only a subjective belief that a particular item is counterfeit.  <u>Id</u>. ¶ 18.   Since 2004, TBG has reported to eBay hundreds of items that it believed infringed its intellectual property.  <u>Id</u>. ¶ 14.  Since 2007, TBG has most often notified eBay electronically through the internet as follows: when it has a good faith belief that a certain item is infringing, TBG clicks a button on the eBay website to "report" the listing.  <u>Id</u>. ¶ 19.  The item listing information is automatically populated, TBG chooses from among several eBay-drafted reasons and explanations for the claimed infringement, and then electronically sends the report.  <u>Id</u>. Before sending the report, TBG confirms that by sending the report, TBG declares, "under penalty of perjury that I am the owner (or its agent) of intellectual property rights pertaining to this listing, and I have a good faith belief that this listing infringes these rights."  <u>Id</u>., Ex. C at TBGI0142.  After the report is sent, TBG has no further role in the investigation; instead eBay reviews the listing and removes items as appropriate and then notifies both the seller and TBG of its action.  <u>Id</u>. at TBGI0143.  The VeRO program does not give TBG the ability to suspend a user from eBay; whether they are removed is solely at the discretion of eBay.  <u>Id</u>. ¶ 20.

Mr. Sexton was aware of TOMMY BAHAMA and apparel or merchandise bearing the TOMMY BAHAMA Marks and Logo prior to 2004.  Declaration of Peter Meringolo ("Meringolo Decl."), Ex. H (Defendant's Responses to Requests For Admissions) at 1-2; <u>see also</u> Defendants Oppositions To Tommy Bahama's Motions For Summary Judgment (hereinafter "Opp.") at 14:11-

4

United States District Court

For the Northern District of California

1   13 (Defendant had knowledge of Tommy Bahama prior to August 2002).[2]  During 2004, Mr. Sexton

2   sold or offered for sale apparel bearing one or more of the TOMMY BAHAMA Marks on eBay

3   under the seller name "ferdinand_d_bull," and he represented that these goods were "authentic

4   TOMMY BAHAMA apparel."  Meringolo Decl., Ex. H at 2.  Specifically, between November 28

5   and December 5, 2004, Mr. Sexton (operating under the eBay seller name ferdinand_d_bull) sold or

6   offered to sell at least five shirts bearing one or more of the TOMMY BAHAMA Marks for sale on

7   eBay.  See id., Ex. G (TBG's First Set of Requests For Admission) at Exs. A-E; Ex. H at 2-3, 5-7.

8   These items are similar to the type of products advertised and sold by TBG, yet, according to TBG,

9   the items in question bear designs that were never authorized, manufactured, distributed or sold by

10  TBG as Tommy Bahama branded apparel.  Declaration of Laura Case ("Case Decl."), ¶¶ 5-7.

11  Defendant counters that the shirts he offered for sale in 2004 were "authentic." Opp. at 4:14-15; 8:2-

12  3.

13          In October and November 2007, Defendant offered for sale at least six shirts bearing the

14  Tommy Bahama mark.  Declaration of Richard Sexton In Opposition to Tommy Bahama's Motions

15  For Summary Judgment ("Sexton Decl.") ¶¶8-9, 11.  Defendant contends that the shirts he offered

16  for sale in 2007 were "authentic." Opp. at 4:14-15; 8:2-3.  According to TBG, the merchandise bore

17  designs similar, but not identical, to original Tommy Bahama artwork, which are some of the most

18  common "copycat" designs used by known counterfeiters.  Declaration of Susan Bennett ("Bennett

19  Decl.") at ¶ 3.  Because of this, TBG believed that the merchandise was counterfeit and reported

20  certain of Defendant's listings to eBay through the VeRO program.  Id. ¶ 4 and Exs. A-C.  TBG

21  states that it did not request that eBay suspend Mr. Sexton's account (id. ¶ 4) and did not speak on

22

23  [2]        Pro Se Defendant has filed documents entitled "Oppositions to Tommy Bahama's Motions For

24  Summary Judgment" and "Response to Tommy Bahama's Reply Brief In Support of Its Motions for
    Summary Judgment" and accompanying Declarations.  Defendant's Opposition and Response state

25  certain facts that are not contained in his Declarations, and vice-versa.  However, all of the documents
    contain a signed verification attesting to the veracity of the facts contained therein under penalty of

26  perjury.   Therefore, and in light of the liberal construction given to pro se pleadings, the Court may
    consider the facts contained in the documents as to which Defendant has personal knowledge. Cf., Rand

27  v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998). However, the Court will not consider conclusory
    statements, legal conclusions or conjecture, put forth without an evidentiary basis, as sufficient to defeat

28  summary judgment.  See Thornhill Publ'g Co., Inc. v. GTE Corp., 594 F.2d 730, 738 (9th Cir.1979)
    (conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues
    of fact and defeat summary judgment).

**United States District Court**
For the Northern District of California

the phone, in person, or in writing about Mr. Sexton (other than sending the VeRO reports) during this time (id. ¶ 5).  TBG communicated with Mr. Sexton three times in late 2007 regarding its reasons for reporting certain auction items to eBay.  Id. ¶ 6; Heaton Decl. 21-22 and Exs. D-E.  eBay suspended Mr. Sexton's account for a minimum of seven days on November 26, 2007.  Meringolo Decl., Ex. F.

On or about November 27, 2007, Mr. Sexton filed a lawsuit against TBG's parent company and eBay in small claims court in Marin County, claiming that TBG's use of the VeRO program to remove his listings constituted negligent and fraudulent conduct and unfair business practices.  On December 14, 2007, TBG filed this federal lawsuit against Mr. Sexton for trademark counterfeiting and infringement as well as unfair competition based on his sales of merchandise bearing one or more of the TOMMY BAHAMA Marks from 2004 through 2007.  Thereafter, Mr. Sexton answered the federal complaint and asserted counterclaims for defamation and intentional and negligent interference with prospective economic advantage.

It is undisputed that Mr. Sexton has provided no evidence of the extent of his eBay business, including the items he sold on eBay, how much he paid for those items, how long they were on eBay, the sale price, his gross or net revenue or profit or other income derived from the sales.  See generally Meringolo Decl., Ex. I (Defendant's Responses to Interrogatories), Ex. J (Defendant's Responses to Document Requests).  He has provided no business plans or financial statements relating to his eBay business.  Id., Ex. J.

**IV.    Analysis**

      **A.    TBG's Motion For Summary Judgment Re Infringement**

            **1.    Federal Trademark Counterfeiting Under 15 U.S.C. § 1114**

Section 1114 of the Lanham Act prohibits the use of "any reproduction, counterfeit, copy or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . ."  A plaintiff asserting a claim of trademark counterfeiting in violation of 15 U.S.C. § 1114 must show: (1) ownership of a valid trademark and (2) counterfeiting of that trademark.  A trademark has been defined as counterfeited "if the defendant, without authorization from the trademark owner, uses an original mark or a copy of a

United States District Court
For the Northern District of California

1  mark in connection with the sale of goods." See, e.g., H-D Michigan, Inc. v. Biker's Dream Inc., 48

2  U.S.P.Q.2d 1108, 1111 (C.D.Cal.1998) (citing Westinghouse Electric Corp. v. General Circuit

3  Breaker & Electric Supply Inc. et al., 106 F.3d 894, 899 (9th Cir. 1997)).  The statute does not

4  require evidence of an actual sale to establish infringement; an offer to sell is sufficient.  See Levi

5  Strauss & Co. v. Shilon, 121 F.3d 1309, 1312 (9th Cir. 1997).

6      There is no dispute as to the evidence demonstrating the validity of Plaintiff's TOMMY

7  BAHAMA marks.  See Heaton Decl., Ex. A (copies of TBG's trademark registrations); Opp. at

8  6:24-25 ("Tommy Bahama is and was the owner of the marks at issue in this litigation.").  See 15

9  U.S.C. § 1057(b) (federal registrations constitute prima facie evidence of validity, ownership and

10  right to use mark).  Thus, the only issue for the Court to decide is whether Defendant has raised a

11  genuine issue precluding summary judgment with respect to whether he counterfeited Plaintiff's

12  trademarks.  Plaintiff contends that it is entitled to summary judgment on its trademark

13  counterfeiting claim because it has conclusively established that Defendant offered for sale and/or

14  sold shirts bearing counterfeits of one or more TOMMY BAHAMA Marks.  Motion at 7:8-10.  TBG

15  offers the testimony of Laura Case, a Merchandising Supervisor with personal knowledge of TBG's

16  product lines and the designs, patterns and styles that TBG has authorized and approved for

17  incorporation into Tommy Bahama branded men's shirts over the years.  See Case Decl.¶¶ 2-3.  Ms.

18  Case states that the shirts sold by Defendant in 2004 are of the same nature as products sold by TBG,

19  that is, casual decorative men's shirts, yet none are authentic and each bears a design, pattern, color

20  or style that was never approved, created, designed, authorized, manufactured, distributed, or sold by

21  TBG.  Id. at ¶¶ 5, 7.  Ms. Case also states that she reviewed almost 300 pages of images of men's

22  shirts authorized, manufactured, distributed or sold by TBG from 1998 through 2004, and that none

23  of the accused shirts are listed in these corporate records.  Id. ¶ 6.

24      Mr. Sexton does not dispute that he sold the five shirts in question bearing Tommy Bahama

25  marks on eBay in 2004, but contends that these products were authentic.  See Opp. at 4:14-15; 8:2-3.

26   He challenges Ms. Case's testimony by pointing to three pages of images of men's shirts that Ms.

27  Case examined (that appear to be part of a Tommy Bahama apparel catalog produced by TBG), and

28  states his belief that the five shirts in question were produced by TBG.  See Opp. at 7:7-9

("Defendant is of the belief that the five shirts Tommy Bahama claims infringed upon their marks,

7

United States District Court

For the Northern District of California

1    were produced in this matter by Tommy Bahama"); Sexton Decl. Exs. C-E.  Defendant offers a chart

2    equating four of the accused shirts with Tommy Bahama shirts included on the documents reviewed

3    by Ms. Case, and opines that the fifth shirt "is identical to Tommy Bahama design layouts . . . and

4    may actually exist in corporate records not furbished in this matter, since 1993 up through 1998 . . .

5    or on pages submitted by Tommy Bahama that have had shirts covered or removed prior to being

6    produced in this matter."  Opp. at 8; <u>see also</u> Sexton Decl. at ¶ 16 ("I have since discovered the shirts

7    from 2004 in Tommy Bahama catalogs produced in this matter by Tommy Bahama from previous

8    year collections").

9          Mr. Sexton does not explain the basis for his belief that the shirts were authentic, describe

10   the similarities or differences between the products he sold and the products shown on the exhibits

11   he relies on, or attach color copies by which the Court might perform a comparison of the accused

12   shirts to those he claims are identical.  He offers no evidence to support his position regarding the

13   fifth shirt; though he believes that it is "identical to Tommy Bahama design layouts," he cannot

14   point to any authentic Tommy Bahama shirt that it resembles.  Therefore his assertion that four of

15   the shirts are authentic is conclusory, and there is no evidence to raise a triable issue of fact as to the

16   fifth one.  However, given that Defendant is pro se and has pointed to some evidence which could

17   support his position with respect to four of the shirts, this is more than a "scintilla" and, if

18   unrebutted, might create an issue of fact to survive summary judgment.

19         On Reply, however, TBG offers a Declaration of Peter P. Meringolo In Support of Reply

20   Briefs ("Meringolo Reply Decl.") which attaches color copies of Mr. Sexton's eBay listings

21   (including photographs of the shirts for sale) and the evidence that Mr. Sexton relies on to support

22   his opposition (images of men's shirts that appear to be part of a Tommy Bahama catalog of

23   authentic merchandise).  TBG asks the Court to compare the images of the accused shirts to the

24   evidence Mr. Sexton claims supports his position that they are authentic, and find that summary

25   judgment is warranted as to its counterfeiting claim.  Mr. Sexton counters that, "Tommy Bahama

26   should have the right to call upon digital technology and photography experts qualified to speak to

27   the color balancing of the photos taken by Defendant at trial before the Court."  Response at 7.

28         The Court can resolve a factual issue on summary judgment if no reasonable jury could reach

a contrary conclusion.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  Here, the Court

United States District Court

For the Northern District of California

1  can decide the question of authenticity as a matter of law by performing a simple comparative

2  analysis of images of the goods in question.  See Wall Mountain Co., Inc. v. Edwards, 2009 WL

3  2524195 (N.D. Cal. Aug. 17, 2009) (granting summary judgment against pro se trademark defendant

4  after comparing pictures of authentic DVD and picture of counterfeited copy); Yurman Studio Inc.

5  v. Castenada, 591 F. Supp. 2d 471, 498-99 (S.D.N.Y. 2008) (finding certain trademarked design

6  elements on authentic goods to be identical to defendant's counterfeit jewelry designs, and granting

7  summary judgment on the identical designs because "no reasonable juror could find that these

8  designs are not counterfeits of Cartier's registered design marks," but denying summary judgment

9  where images were not sufficiently clear to make a determination); Boggs v. Rubin, 161 F.3d 37, 41

10  (C.A.D.C.,1998) (affirming lower court's grant of summary judgment of counterfeiting based on in

11  camera examination of counterfeit goods).

12         Mr. Sexton argues that the accused shirts listed in eBay auctions 3944204059 and

13  3945623506 are "authentic," and supports this assertion by citing document TBGI0364 (containing

14  an image of TBG's product T30209 "Cuban Extravaganza Camp" shirt).  However, a comparison of

15  the color photo of the shirts on Mr. Sexton's eBay listings to the color copy of the authentic shirt in

16  TBG's catalog, as well as their descriptions, establishes that no reasonable juror could find them to

17  be the same shirt, as the colors are almost entirely different and the product name has been changed

18  on the counterfeit shirt.  See Meringolo Decl. Exs. F, G, H.  Mr. Sexton counters that, although

19  "information on hangtags was not produced in this matter," early TBG product hangtags contained

20  little information about the product such as the name and color but such information was later

21  included.  See Response at 3-4; Sexton Response Decl. Ex. B-D.  Mr. Sexton's point appears to be

22  that the lack of information on early product hangtags explains the discrepancy between the product

23  and color names on his products and the "official" TBG product and color names, but he does not

24  explicitly state this.  However, the product and color names listed on Mr. Sexton's eBay postings are

25  not the only thing different about the accused products – the fact remains that the products are so

26  visually dissimilar that no reasonable juror could find the shirt to be authentic.

27         Similarly, Mr. Sexton argues that the accused shirt listed in eBay auction 3945624067 is

28  authentic, and supports this assertion by citing document TBGI0265 (containing an image of TBG's

product T3580 "O-Lei Camp" shirt).  A comparison of the color photos of these shirts and their

United States District Court

For the Northern District of California

1    descriptions similarly establishes that no reasonable juror could find them to be the same, as they are

2    visually dissimilar (one is tonal and one is not), the counterfeit shirt is listed as a "blue" color but the

3    authentic shirt was not produced by TBG in blue, and the product name has been changed on the

4    counterfeit shirt.  See Meringolo Decl. Exs. B, C

5           Finally, Mr. Sexton argues that the accused shirt listed in eBay auction 3944203641 is

6    authentic, and supports this assertion by citing document TBGI0193 (containing an image of TBG's

7    product 91T3268 "The Castaway Camp" shirt).  A comparison of the color photos of these shirts and

8    their descriptions establishes that no reasonable juror could find them to be the same, as the

9    counterfeit shirt is offered in silk, but the authentic shirt was only made out of rayon.  Additionally,

10   the images on the shirts are different (one contains a hut and one does not), the shirt is listed as being

11   the color "bergamot" but the authentic shirt was not produced in this color, and the name of the

12   accused shirt is the same as another, entirely different authentic shirt.  See Meringolo Decl. Exs. D,

13   E.  In his Response and at oral argument, Mr. Sexton argued that the color "bergamot" is not part of

14   his vocabulary, so he would not have thought to use in connection with his sales, apparently to show

15   that the shirt must therefore be authentic.  TBG persuasively countered that it produced some apparel

16   in the color bergamot, but not this particular shirt, so Mr. Sexton's argument actually advances its

17   position by showing that there was an unsuccessful effort to make the goods look like authentic

18   goods.

19          For the foregoing reasons, summary judgment of counterfeiting is appropriate as to these

20   four shirts because no reasonable juror could determine them to be authentic.  As to the fifth shirt,

21   listed in eBay auction 3945623628, Mr. Sexton presents no evidence to support his argument that it

22   is authentic.  He simply raises the possibility that the shirt existed in a pre-1998 catalog, but does not

23   explain how or when he acquired the shirt that might lend support to this position or create a triable

24   issue of fact.  Therefore, summary judgment is appropriate as to the fifth shirt as well.

25          In addition to attempting to raise a factual issue regarding authenticity, Mr. Sexton also

26   defends against TBG's trademark claims on grounds that at least one of the shirts was "purchased

27   and resold within the limits of the law according to the first-sale doctrine and can be traced to its

28   original place of purchase, on eBay."  Opp. at 8:20-22.  Generally, "the right of a producer to control

     distribution of its trademarked product does not extend beyond the first sale of the product. Resale

United States District Court

For the Northern District of California

1    by a purchaser of the original article under the producer's trademark is neither trademark

2    infringement nor unfair competition."  <u>Sebastian International v. Longs Drug Stores</u>, 53 F.3d 1073,

3    1074 (9th Cir. 1995).  However, Mr. Sexton has put forth no evidence regarding where he got the

4    shirts and whether or not he was the first purchaser.  Further, as discussed above, because the shirts

5    were not authentic, this doctrine does not apply.  <u>See Symantec Corp. v. CD Micro, Inc</u>., 286 F.

6    Supp. 2d 1265, 1274 (D.Or. 2003) (no protection under first sale doctrine where defendant was not

7    selling genuine product for which the consumer bargained).

8         Defendant also contends that Plaintiff's trademark claims are barred by the doctrine of

9    laches, arguing that "Plaintiff has allowed an unreasonable amount of time to pass since raising any

10   issue of auctions from 2004."  Opp. at 11.  Laches is an equitable defense that prevents a plaintiff

11   who, "with full knowledge of the facts, acquiesces in a transaction and sleeps upon his rights."

12   <u>Danjaq LLC v. Sony Corp.</u>, 263 F.3d 942, 950-51 (9th Cir.2001).  Laches can bar trademark

13   infringement cases, but the Ninth Circuit "[has] done so only where the trademark holder knowingly

14   allowed the infringing mark to be used without objection for a lengthy period of time."  <u>GoTo.com,</u>

15   <u>Inc. v. Walt Disney Co.</u>, 202 F.3d 1199, 1209 (9th Cir. 2000) (internal quotation omitted).  Where,

16   as here, the plaintiff has filed suit within the statute of limitations, a strong presumption against

17   laches applies.  <u>See Reno Air Racing Ass'n., Inc. v. McCord</u>, 452 F.3d 1126, 1138-39 (9th Cir.

18   2006).  Further, to prevail on a laches defense, a defendant must prove that it suffered prejudice as a

19   result of an unreasonable delay by the plaintiff.  <u>Danjaq LLC</u>, 263 F.3d at 950-51.  Here, Mr. Sexton

20   does not attempt to refute this presumption or allege any harm he suffered as a result of any delay, so

21   this defense does not help him to defeat summary judgment.

22        In light of the foregoing, the Court GRANTS summary judgment on TBG's counterfeiting

23   claim.

24                   **2.      Federal Trademark Infringement Under 15 U.S.C § 1114**

25        To prevail on its trademark infringement claim, TBG must show that: (1) it has a valid,

26   protectable trademark; and (2) that Defendant's use of the mark is likely to cause confusion. <u>See</u>

27   <u>Applied Information Sciences Corp. v. eBay, Inc.</u>, 511 F.3d 966, 969 (9th Cir. 2007).  As discussed

28   above, it is undisputed that TBG holds federally registered trademarks in the goods at issue, and

     there is undisputed evidence that Defendant used one or more of the TOMMY BAHAMA Marks

**United States District Court**
For the Northern District of California

1    when he sold or offered for sale the accused shirts on eBay in 2004.  See Heaton Decl., Ex. A

2    (copies of TBG's trademark registrations); Opp. at 6:24-25; Meringolo Decl., Ex. H at 2-7;

3    Meringolo Reply Decl. C, E, G, H.  Thus, the only question remaining is whether Defendant's use is

4    likely to cause confusion.

5         "A likelihood of confusion exists when customers viewing a mark would probably assume

6    that the product or service it represents is associated with the source of a different product or service

7    identified by a similar mark." Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc., 457 F.3d

8    1062, 1075-76 (9th Cir. 2006) (internal citations and quotations omitted). "The Ninth Circuit

9    employs an eight-factor test (the 'Sleekcraft' factors) to determine the likelihood of confusion: (1)

10   strength of the mark(s); (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of

11   actual confusion; (5) marketing channels; (6) degree of consumer care; (7) defendant's intent; (8)

12   likelihood of expansion." Id. at 1076 (citation omitted). However, the factors are not a rigid test and

13   the Court may apply them as it sees fit.  Id.  In cases where the evidence is clear and tilts heavily in

14   favor of a likelihood of confusion, the Ninth Circuit has "not hesitated to affirm summary judgment

15   on this point."  Id. at 1075; see also Nissan Motor Co. v. Nissan Computer Corp., 378 F.3d 1002,

16   1019 (9th Cir. 2004) (affirming summary judgment where the marks were "legally identical," the

17   goods at issue were related, and the marketing channels overlapped).  Here, the Sleekcraft factors

18   warrant summary judgment on the issue of infringement.

                    **a.    Strength of the Mark**

20        TBG argues that its TOMMY BAHAMA Marks are strong, as they are well recognized in

21   the United States and abroad.  Ms. Heaton's Declaration at paragraphs five through ten explains in

22   detail TBG's longstanding and extensive use of its marks, its marketing channels and expenditures,

23   and its multi-million dollar annual sales.  Mr. Sexton presents no evidence to refute this, and admits

24   that he "chose plaintiff's marks for their strength." Opp. at 14:5; see also Meringolo Decl., Ex. H at

25   1-2 (admission that he was aware of the trademarks in question at the time he sold the infringing

26   goods).

                    **b.    Relatedness of the Goods**

**United States District Court**
For the Northern District of California

1    TBG correctly points out that during the time period relevant to this lawsuit (late 2004), TBG

2    and Mr. Sexton were both selling decorative casual men's shirts bearing one or more of the

3    TOMMY BAHAMA Marks.  See id. at 5-7 (Sexton's admissions that he was selling Tommy

4    Bahama branded shirts on eBay during relevant time period); Case Decl. ¶¶ 5-7, Ex. A (TBG was

5    selling similar shirts).

6                            **c.      Similarity of the Marks**

7           It is undisputed that Mr. Sexton sold or offered for sale products bearing the TOMMY

8    BAHAMA Marks.  See Meringolo Decl., Ex. H at 5-7; see also Opp. at 4:22 ("The Parties both sell

9    Tommy Bahama® apparel on the internet.").  He admits to the "extreme similarity in marks and

10   designs he sold or offered for sale," but contends that this is because the goods he sold were

11   authentic.  Opp. at 13:8-10.  As discussed above, however, no reasonable juror could find that the

12   goods were authentic based on the evidence before the Court.

13                           **d.      Evidence of Actual Confusion**

14          Mr. Sexton argues that TBG should have offered consumer testimony and surveys to

15   establish this factor.  Opp. at 14.  However, TBG correctly states that evidence of actual confusion is

16   not required.  See, e.g., Golden Door, Inc. v. Odisho, 646 F.2d 347, 351 (9th Cir. 1980).  Neither

17   party has put forth evidence of actual confusion, and so this factor neither supports nor points

18   against

19

20   likelihood of confusion.

21                           **e.      Marketing Channels**

22          The undisputed evidence shows that the goods were being sold in the same marketing

23   channel – on the internet.   See Opp. at 4:22 ("The Parties both sell Tommy Bahama® apparel on the

24   internet."), 14:12-13 ("Defendant was selling Tommy Bahama apparel locally in the Bay Area on

25   eBay since 2001); Sexton Decl. ¶ 5 (same); Heaton Decl. ¶13 (Tommy Bahama products are

26   advertised and sold on eBay).

27                           **f.      Degree of Consumer Care**

28

13

1    TBG argues, without citing any evidence, that "likely purchasers were average consumers"

2  and there was an "obvious risk that these consumers would be misled by the counterfeit items

3  advertised and/or sold by Mr. Sexton." Motion at 11:15-18. Mr. Sexton counters, also without

4  citing any evidence, that his sales of Tommy Bahama shirts on eBay ranged in price from

5  approximately $60.00 to $120.00. He argues that "[a]pparel items that cost over one hundred dollars

6  are not inexpensive products so the Court can assume that the relevant consumers will exercise a

7  fairly high degree of care prior to making any purchases." Opp. at 15:1-6. Mr. Sexton's point is

8  well-taken. The evidence attached to the Meringolo Reply Declaration shows that the accused shirts

9  were listed on eBay for sale between $64.99 and $84.00. See Meringolo Reply Decl., Exs. C, E, G,

10  H. It is reasonable that consumers paying such a price for a shirt on eBay would be likely to

11  exercise a relatively high degree of care in making their purchases. See E. & J. Gallo Winery v.

12  Gallo Cattle Co., 967 F.2d 1280, 1293 (9th Cir. 1992) ("When goods are expensive, it is assumed

13  that buyers will exercise greater care in their purchases."). This factor therefore somewhat weighs

14  against likelihood of consumer confusion.

15                    **g.        Defendant's Intent**

16    TBG argues that Mr. Sexton's use of marks identical to the TOMMY BAHAMA Marks

17  shows conclusively his intent to trade on its goodwill. Mr. Sexton presents no evidence to refute

18  this, and admits that he "chose plaintiff's marks for their strength." Opp. at 14:5; see also Meringolo

19  Decl., Ex. H at 1-2 (admission that he was aware of the trademarks in question at the time he sold

20  the infringing goods). Defendant argues that he had no bad intent or improper motive, and that he

21  responded to each cease and desist letter by trying to resolve the matter amicably. Opp. at 15:8-16.

22  However, the question is not whether he acted in good faith in trying to resolve the dispute; the

23  question is what his motive was for using TBG's trademarks in commerce. The undisputed evidence

24  shows that he specifically chose to sell Tommy Bahama merchandise because of the strength of the

25  marks. In any case, the Court will assume he had no bad intent and he mistakenly believed the shirts

26  to be authentic. Nevertheless, the balance of factors weighs against him.

27                    **h.        Likelihood of Expansion**.

28

1    TBG does not consider this factor relevant to the analysis, and therefore Mr. Sexton does not

2    address it in his opposition.  See Motion at 12:6-9.  Because the parties were selling similar goods in

3    identical marketing channels, likelihood of expansion is irrelevant to the Court's analysis.

4    Based on the foregoing, the evidence is undisputed and weighs sharply in favor of the

5    likelihood of confusion.  The Court therefore GRANTS summary judgment as to trademark

6    infringement.

7                    **3.        Federal Unfair Competition Under 15 U.S.C § 1125(a)**

8    TBG also contends that Mr. Sexton has violated 15 U.S.C. § 1125(a) of the Lanham Act by

9    selling unauthorized merchandise on eBay.  Section 1125(a) provides that:

10       (1) Any person who, on or in connection with any goods or services, or any
         container for goods, uses in commerce any word, term, name, symbol, or device, or
11       any combination thereof, or any false designation of origin, false or misleading
         description of fact, or false or misleading representation of fact, which--
12       (a)is likely to cause confusion, or to cause mistake, or to deceive as to the
         affiliation, connection, or association of such person with another person, or as to
13       the origin, sponsorship, or approval of his or her goods, services, or commercial
         activities by another person . . . shall be liable in a civil action by any person who
14       believes that he or she is or is likely to be damaged by such act.

15   To prevail on a claim under Section 1125(a), a plaintiff must establish (1) ownership of a protectable

16   trademark, (2) unauthorized use of that trademark by the defendant, (3) that the defendant's use was

17   in connection with goods or services, (4) that the use was in interstate commerce, and (5) a

18   likelihood of consumer confusion.  See Sun Microsystems, Inc. v. Microsoft Corp., 999 F.Supp.

19   1301, 1308 (N.D.Cal.1998).

20   Again, there is no dispute that TBG owns the TOMMY BAHAMA Marks.  There is also no

21   dispute that the use was in interstate commerce in connection with the sale of goods.  See Meringolo

22   Decl., Ex. H at 5-7 (admissions that Mr. Sexon sold or offered to sell shirts on eBay bearing

23   TOMMY BAHAMA Marks).  TBG relies on its assertion that Mr. Sexton's use of identical copies

24   of one or more of those marks on the shirts he offered for sale was unauthorized and likely to cause

25   confusion.  Motion at 12:22-26.  As discussed above, no reasonable juror could find that the shirts

26   were authentic based on the evidence submitted, and that there is no triable issue of fact as to

27   whether there was a likelihood of consumer confusion.  Therefore, and for the reasons discussed

28   above, the Court GRANTS summary judgment as to federal unfair competition claim as well.

**United States District Court**
For the Northern District of California

1

### 4.   Trademark Infringement And Unfair Competition Under California Common Law and California Business & Professions Code § 17200

2      TBG next argues briefly that summary judgment is appropriate as to each of its state and

3  common law claims because, "all relief is based on a showing of a likelihood of confusion."  Motion

4  at 13:2-7.  Here, there is no triable issue of fact as to likelihood of confusion and therefore summary

5  judgment is appropriate as to these claims as well.  See Entrepreneur Media, Inc. v. Smith, 279 F.3d

6  1135, 1153 (9th Cir. 2002) (actions pursuant to section 17200 are "substantially congruent' to claims

7  made under the Lanham Act); Jada Toys, Inc. v. Mattel, Inc., 518 F.3d 628, 631-32 (9th Cir. 2007)

8  (federal claims under 15 U.S.C. 1114(1) and 1125(a) and state law claims for unfair competition

9  under California Business and Professions Code § 17200 and California common law are all subject

10  to the same test).

11      ### 5.   Lanham Act Statutory Damages

12      TBG elects to receive statutory damages under the Lanham Act pursuant to 15 U.S.C. §

13  1117(c) because it argues that Mr. Sexton has not provided it with evidence to support an actual

14  damages claim.  This provision allows an award of between $1,000 and $200,000 "per counterfeit

15  mark per type of goods or services sold, offered for sale, or distributed, as the court considers just."

16  See 15 U.S.C. § 1117(c).  Plaintiff does not seek attorney's fees, and such fees are not available

17  where a plaintiff elects to receive statutory damages under § 1117(c).  K and N Engineering, Inc. v.

18  Bulat, 510 F.3d 1079, 1083 (9th Cir. 2007).

19

20      TBG has shown that Mr. Sexton sold at least five counterfeit shirts bearing two of its

21  trademarks, and requests that the Court "award statutory damages in an amount reasonably

22  calculated to compensate Tommy Bahama for its damages and to deter Mr. Sexton from engaging in

23  future infringing activity."  Motion at 15.  At oral argument, TBG confirmed that it does not seek to

24  "max out" the damages against Defendant, but simply wants a reasonable award, recognizing that

25  Defendant is not a wealthy individual.  Mr. Sexton's Opposition and Response do not respond to the

26  question of damages, other than through general arguments that the shirts were authentic and he

27  acted in good faith and is therefore not liable.  At oral argument, Mr. Sexton confirmed that he has

28  very limited means and any award will be a significant burden to him.

1    Based on the parties' respective positions, the Court finds that an award of $5000.00 per

2    mark, or $10,000.00 total, is just and sufficient under the circumstances to deter future infringement.

3    The Court therefore ENTERS JUDGMENT against Defendant in the amount of $10,000.00.

4    **B.    Tommy Bahama's Motion For Summary Judgment of Defendant's**
            **Counterclaims**

5    In addition to its motion regarding infringement, TBG has also filed a motion for summary

6    judgment as to Mr. Sexton's counterclaims for defamation, intentional interference with prospective

7    advantage, and negligent interference with prospective advantage.  TBG contends that each of these

8    claims fails as a matter of law on the basis of "privilege" because all it did was report potentially

9    infringing auction listings to eBay pursuant to eBay's procedures, and it acted in good faith.  TBG

10   also argues that there is no evidence to support Mr. Sexton's claims because there is no evidence of

11   a defamatory statement, only opinions, and because there is no evidence of an independently

12   wrongful act, causation, or damage to support the interference claims.  Mr. Sexton's Opposition does

13   not defend against these arguments, other than by arguing (without evidence other than his own

14   conclusory statements) that he was damaged by TBG's actions.

15   **1.    Defamation**

16   Defamation "involves the intentional publication of a statement of fact that is false,

17   unprivileged, and has a natural tendency to injure or which causes special damage." Smith v.

18   Maldonado, 72 Cal. App. 4th 637, 645 (1999)(citing Cal. Civ. Code, §§ 45, 46; 5 Witkin, Summary

19   of Cal. Law (9th ed. 1988) Torts § 471 at ¶¶557-58.))   The California Legislature has defined a

20   privileged communication in the defamation context as communication, "without malice, to a person

21   interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to

22   the person interested as to afford a reasonable ground for supposing the motive for the

23   communication to be innocent, or (3) who is requested by the person interested to give the

24   information." Cal. Civ. Code § 47(c).   Here, the undisputed evidence shows that Tommy Bahama

25   made the allegedly defamatory statements to eBay ("that Sexton was dealing in counterfeit goods;"

26   see Counterclaim at 8) in concordance with eBay's VeRO policy.  Bennett Decl. ¶ 4.

27   TBG also argues that the undisputed evidence demonstrates that eBay and TBG share an

28   interest in preventing counterfeiting and trademark infringement and the challenged statements were

made in furtherance of this interest.  TBG does not cite any evidence of this shared interest, and Mr.

Sexton puts forth no rebuttal evidence, but there is evidence in the record supporting this contention.

See Heaton Decl. ¶14 ("EBay's VeRO program is the only commercially effective way for Tommy

Bahama to monitor auction listings for potentially infringing items for listings."); Ex. C at

TBGI0128 ("Our goal with this [VeRO] upgrade is to make it easier for rights holders to help us

identify intellectual property infringements so that we may remove them expeditiously from our

site."). Based on this evidence, the Court concludes that TBG and eBay share an interest in

preventing trademark infringement and that TBG's communication through VeRO was made in

furtherance of this goal.  Cf., Rossi v. Motion Picture Ass'n of America, Inc., 391 F.3d 1000, 1006

(9th Cir. 2004) (finding that the MPAA's good faith report of copyright infringement made to an

internet service provider under the notice-and-takedown procedures of the DMCA was privileged

because both entities had an interest in preventing violation of copyright laws, even though

defendant did not do a thorough investigation of the infringement).  There is no evidence of malice

on the part of Plaintiff beyond Defendant's bald conclusory statements and speculation.  See Opp. at

6:28 (employees of TBG are "biased"); 7:13-14 ("[a]ll good faith beliefs possible were dispelled

after Tommy Bahama was made aware in 2002 that they were falsely removing my auctions").

Indeed, the evidence shows that TBG made a good faith effort to distinguish between authentic and

non-authentic goods, and only reported those goods that it had reason to believe were actually

counterfeits.  See Bennet Decl. ¶ 4, 6, Exs. A, B, C; Heaton Decl. ¶¶ 15-18, Ex. D.

Because the undisputed evidence shows that the allegedly defamatory statement was made in

a privileged context and there is no evidence of malice, summary judgment as to Defendant's

defamation counterclaim is appropriate.[3]  See Conkle v. Jeong, 73 F.3d 909, 917 (9th Cir. 1995)

(summary judgment of slander claim granted where no evidence of malice to overcome privilege).

TBG also argues that summary judgment is appropriate on the defamation claim because any

alleged statements were opinion, or true when made.  Under California law, a statement is deemed

an unactionable opinion if it is not "provably false;" i.e., if it cannot "'reasonably [be] interpreted as

---

[3]    TBG also argues that the privilege defense applies to Mr. Sexton's interference claims.
However, the Court need not decide if the privilege defense applies to the interference claims because,
as discussed below, there is no evidence to satisfy the necessary elements of the claims.

United States District Court

For the Northern District of California

1   stating actual facts' about an individual." <u>Nygard, Inc. v.  Uusi-Kerttula</u>, 159 Cal. App. 4th 1027,

2   1050 (2008).  Here, Mr. Sexton's defamation claim is based on TBG's alleged report to eBay that

3   Mr. Sexton was selling counterfeit goods.  <u>See generally</u> Counterclaim.  However, the undisputed

4   evidence shows that TBG stated to eBay, in the form of a VeRO report, that TBG had a "good faith

5   belief" that each of the listings was a "potential trademark infringement."  <u>See</u> Heaton Decl. ¶ 19,

6   Ex. C at TBGI0138, TBGI0142; Bennett Decl., ¶ 4.  Such qualified language is not a "provably

7   false" statement of fact; it is a statement of opinion that is not actionable as defamation, even if

8   ultimately proven false.  For this additional reason summary judgment of the defamation claim is

9   appropriate.

**2. Intentional and Negligent Interference With Prospective Advantage**

11       The elements of Mr. Sexton's counterclaims for intentional and negligent interference with

12  prospective advantage include: "(1) an economic relationship between the plaintiff and some third

13  party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge

14  of the relationship; (3) intentional [or negligent] acts on the part of the defendant designed to disrupt

15  the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff

16  proximately caused by the acts of the defendant."  <u>Korea Supply Co. v. Lockheed Martin Corp</u>., 29

17  Cal.4th 1134, 1153 (2003).  The plaintiff must also prove that the interference was wrongful,

18  independent of its interfering character.  <u>Id.</u> (citing <u>Della Penna v. Toyota Motor Sales, U.S.A., Inc.</u>,

19  11 Cal.4th 376, 392-393 (1995)).  "[A]n act is independently wrongful if it is unlawful, that is, if it is

20  proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal

21  standard."  <u>Id.</u> at 1159.

22       TBG successfully argues that Mr. Sexton cannot prove these elements.  As to the first

23  element, there is no evidence of a probability of future economic benefit because Mr. Sexton has not

24  offered any evidence of past profits and sales on eBay that would indicate future sales.  Mr. Sexton

25  counters that his "lack of sales records has not disadvantaged Tommy Bahama as Tommy Bahama

26  could have obtained defendant's sales records through its privileged relationship with eBay."  Opp.

27  at 16:21-22.  However, he cites no evidence for this opinion and puts forth no evidence of past sales

28  which might bear on future sales, or anything else to support this element of his claim.  Similarly,

TBG correctly argues that Mr. Sexton cannot establish the fifth element, economic harm, because

United States District Court

For the Northern District of California

1   there is no evidence of the items he had listed or intended to list at the time of his suspension from

2   eBay or any other evidence of actual damage.  Finally, there is no evidence of any independent

3   wrongful conduct because, as discussed above, Mr. Sexton's defamation claim (the only predicate

4   wrongful act he has alleged) fails as a matter of law.

5          For each of the foregoing reasons, there is no triable issue of fact as to Mr. Sexton's

6   interference counterclaims and summary judgment is GRANTED as to these claims as well.  See

7   Dudiknov v. MGA Entertainment, Inc., 410 F. Supp. 2d 1010, 1019 (D. Colo. 2005) (summary

8   judgment affirmed against eBay seller on tortious interference claim where rights holder acted

9   within its rights by utilizing the VeRO program and this "could not, as a matter of law, be improper

10  interference."

11  **C.     Rule 56(f)**

12         Federal Rule of Civil Procedure 56(f) allows the Court to refuse an application for summary

13  judgment or order a continuance if the party opposing the motion cannot present "facts essential to

14  justify the party's position."  To prevail under this Rule, parties opposing a motion for summary

15  judgment must make "(a) a timely application which (b) specifically identifies (c) relevant

16  information, (d) where there is some basis for believing that the information sought actually exists."

17  Employers Teamsters Local Nos. 175 and 505 Pension Trust Fund v. Clorox Co., 353 F.3d 1125,

18  1129 (9th Cir. 2004) (quoting VISA Int'l Serv. Ass'n v. Bankcard Holders of Am., 784 F.2d 1472,

19  1475 (9th Cir.1986)).  "The burden is on the party seeking additional discovery to proffer sufficient

20  facts to show that the evidence sought exists, and that it would prevent summary judgment."  Id. at

21  1129-30. " The district court does not abuse its discretion by denying further discovery if the movant

22  has failed diligently to pursue discovery in the past, or if the movant fails to show how the

23  information sought would preclude summary judgment." ' Id. at 1130.

24         Defendant's Opposition appears to contain a request for something like a Rule 56(f)

25  continuance, or at least some references that could be so construed.  See Opp. at 7:20-23.  For

26  example, Defendant complains that he has not received information regarding "Tommy Bahama

27  corporate held eBay accounts" or the VeRO processes/policy in place in 2004 and has been unable

28  to take the deposition of Tiffany Easton, whom Defendant contends was TBG's corporate counsel

"in charge of removals" in December 2004.  Opp. at 5-6.  Defendant also seeks TBG's pre-1998

**United States District Court**
For the Northern District of California

1   catalogs or printouts of authorized designs.  Id at 7.  Further, it is undisputed that neither party has

2   access to the five allegedly counterfeit shirts sold by Defendant in 2004 and Mr. Sexton raises this as

3   well.  Id. at 6.  Finally, his opposition states that he "continues to discover and search for more

4   factual evidence to support his counterclaims."  Opp. at 9:4-6.

5          In an abundance of fairness to the pro se Defendant, the Court construes these statements as a

6   Rule 56(f) request for a continuance, but denies the request.  Mr. Meringolo's Reply Declaration

7   adequately sets forth the history of the parties' discovery process, and shows that Mr. Sexton has had

8   an opportunity to take full discovery but failed to do so.  For example, he did not subpoena eBay for

9   documents or deposition testimony, or former TBG employees, despite being advised by TBG's

10  counsel that he needed to do so.  See Meringolo Reply Decl., Ex. A; see also Response at 9

11  (admitting that he was "well aware of the difficulties that would face him," but made a conscious

12  decision not to depose witnesses but instead to call them at trial for the first time).  Such deficiencies

13  will not delay this case any further even though Mr. Sexton is proceeding pro se.  See Grinage v.

14  Leyba, 2008 WL 199720, at *12 (D.Nev. 2008) ("Although a pro se litigant's pleadings and papers

15  are held to a less stringent standard than those of represented parties, pro se litigants are not excused

16  from following the rules and orders of the court, including the discovery rules.").  Additionally, with

17  the exception of pre-1998 TBG catalogs, Mr. Sexton has not provided any indication of how

18  additional evidence could defeat summary judgment.  He does argue that one of the accused shirts

19  "may actually exist" in corporate records from 1993 through 1998, but does not explain the basis for

20  this speculation.  Speculation regarding one of the shirts, when infringement as been found as to four

21  others, is insufficient to require a Rule 56(f) continuance.

22

23

24          **IT IS SO ORDERED**.

25  Dated: December 3, 2009

26                                                    _____
                                                      ELIZABETH D. LAPORTE
27                                                    United States Magistrate Judge

28

21